BENTON–VOLVO–METAIRIE, INC., and Benton Auto Works International, Inc., d/b/a Benton–Volvo–New Orleans, Plaintiffs-Appellants,

v.

VOLVO SOUTHWEST, INC., et al., Defendants-Appellees.

No. 72–2508.

United States Court of Appeals, Fifth Circuit.

June 7, 1973.

Maumus F. Claverie, Jr., New Orleans, La., for plaintiffs-appellants.

Gene W. Lafitte, New Orleans, La., for defendants-appellees.

Before COLEMAN, MORGAN and RONEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is an appeal from an order of the district court granting the motion of the appellee, Volvo Southwest, Inc., for a summary judgment. The appellant Benton-Volvo-Metairie, Inc., brought an action against Volvo Southwest to recover damages for an alleged breach of a dealership franchise agreement. After the complaint and answer were filed, the appellee (defendant below) moved for summary judgment alleging no genuine issue as to any material fact. The motion was granted by the district court without opinion. We remand for further proceedings.

On March 11, 1968, plaintiff Benton-Volvo and defendant Volvo Southwest entered into a contract granting Benton-Volvo a dealer franchise for Metairie, Louisiana. Plaintiff appeared to

have given up a Volvo dealership in New Orleans in order that it might obtain this dealership. In addition, plaintiff purchased land, building, machinery, materials, facilities, equipment, a leasehold interest, and borrowed money in reliance upon the acquisition and continued possession by the plaintiff of this franchise.

On July 24, 1969, Lars Samuelson, a vice president of defendant Volvo Southwest, sent a letter to Benton-Volvo-Metairie informing it that Volvo Southwest had elected to terminate its franchise agreement with Benton-Volvo-Metairie pursuant to the written contract. The letter of July 24th gave no reason for this termination and none was required by the franchise agreement. Benton-Volvo-Metairie replied by letter on September 19, 1969, informing Volvo Southwest that under Louisiana law such termination was illegal and that Benton-Volvo-Metairie considered this termination notice null and void. In the same letter Benton-Volvo-Metairie did offer to discuss sale to Volvo Southwest of the good will and physical plant of the dealership, such physical plant having been erected on behalf of and upon demand of Volvo Southwest. Benton-Volvo-Metairie went on to state that if Volvo Southwest proceeded as if the termination were valid, Benton-Volvo-Metairie would have no choice but to file a court action in order to protect its interest.

### Proceedings Below

Volvo Southwest did proceed as if the termination were valid and on September 21, 1970, Benton-Volvo-Metairie filed a complaint in the United States District Court for the Eastern District of Louisiana.

The complaint below alleged that Volvo Southwest cancelled its dealership agreement without due regard to the equities of Benton-Volvo-Metairie and without just provocation. The complaint further asserted that such termination was illegal under the laws of the State of Louisiana[1] and contrary to public policy. As a result of this termination the plaintiff maintains it was no longer able to sell and perform warranty or non-warranty repair work on Volvo automobiles or stock and sell parts for Volvos. Consequently, plaintiff insists that its investment in this dealership was rendered valueless and damages should be awarded in the amount of $851,493.34.

Defendant Volvo Southwest answered defending its action by asserting that the Louisiana statute in question was in violation of the equal protection and due process clauses of the Fourteenth Amendment and therefore could not be applied to defendant Volvo Southwest. Defendant also insists that it had just cause and provocation to terminate and listed in its answer eight reasons for doing so. However, none of these reasons were substantiated or even mentioned in the affidavits submitted during the proceedings below.

Defendant then moved for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure, alleging that no cause of action was stated by the plaintiff upon which relief could be granted. Defendant submitted affidavits in compliance with Rule 4(e) of the Federal Rules of Civil Procedure. These affidavits, however, in no way substantiated any of defendant's claims as to the appropriateness or justification for their termination of Benton-Volvo-Metairie's dealership.

The trial court granted the defendant's motion for summary judgment. The plaintiff below then appealed to this

---

1. Section 32:1254(4)(c) of the Louisiana Code reads as follows:

To unfairly, without due regard to the equities of said dealer and without just provocation, cancel the franchise of any motor vehicle dealer. The nonrenewal of a franchise or selling agreement with-out just provocation or cause shall be deemed an evasion of this paragraph and shall constitute an unfair cancellation, regardless of the terms or provisions of such franchise or selling agreement.
See also Section 32:1254(4)(a).

court asserting that the Louisiana statute concerning termination of automobile franchise dealerships, supra, is constitutional. The defendant disputes this contention.

The lower court's order granting the motion for summary judgment was not accompanied by findings of fact or conclusions of law, and nothing appears in the record to indicate the grounds upon which the district court based its ruling.

### Issues

It appears to this court that there are several possible arguments for a summary judgment ruling. The lower court could have decided that the Louisiana statute in question was unconstitutional and, therefore could not be applied in this case, or the district court could have found that public policy in Louisiana does not permit a contract of this type. Furrthermore, the trial court possibly found that considering all the evidence in the light most favorable for the plaintiff there was no factual basis for relief. This court is cognizant of the rule that a question of constitutionality should be avoided when there are other possible grounds upon which a decision can be based. Because all these possible avenues of approach were open to the court below, this court is in doubt as to which avenue that court took to reach its decision for summary judgment.

### I.

Under our present system of notice pleadings, both the complaint and the answer below allege grounds upon which the granting or denying of summary judgment could be based. The constitutionality of the Louisiana statute was not the sole issue with which the trial court was faced.

The immediate problem that confronts us then is whether the district court founded its granting of summary judgment upon the theory of the unconstitutionality of the Louisiana statute or whether the district court based its decision upon other available grounds. Furthermore, it seems to this court that both parties are also uncertain as to why the district court granted summary judgment.[2]

It appears to be the invariable practice of our courts not to consider the constitutionality of state legislation unless it is imperatively required. Bush v. Texas, 372 U.S. 586, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed. 2d 1000 (1963). Furthermore, as a general principle, courts will not pass on the constitutionality of an act of the legislature if the merits of the case in hand may be fairly determined otherwise. If the case may be decided on either of two grounds and one of these does not involve the constitutionality of a statute, the court will decide it on that ground. Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911).[3]

Therefore, this court is restrained from inferring constitutional rationale as regards the lower court decision in this case. There is very little

---

2. When counsel were asked at oral argument how they arrived at their conclusion that the constitutionality of the statute was critical to the decision below, their only reply was that the district judge's law clerk had indicated to them that this was what the law clerk thought the judge had considered in granting summary judgment.

3. Often courts will even refuse to decide constitutional questions when the record discloses other grounds for decision, whether or not such other grounds have been properly raised before the court by the parties. Neese v. Southern R. Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60

(1955). Furthermore, the Supreme Court, upon determining that a Federal Court of Appeals had before it not only a constitutional question which was decided, but also a non-constitutional question which might properly alone have served as adequate ground upon which to dispose of the case but which was not considered or decided, will vacate the judgment of the Court of Appeals and remand the case to it for decision on the non-constitutional issue, and it will not consider the constitutional issue. Alma Motor Company v. Timken-Detroit Axle Company, 329 U.S. 129, 67 S.Ct. 231, 91 L. Ed. 128 (1946).

before this court then to be properly examined which can be used for the purpose of review. Because these non-constitutional grounds cannot be adequately examined at this time, this court must abstain from ruling as to the constitutionality of the Louisiana statute in question.

## II.

This court is called on to decide whether the granting of summary judgment was correct based on the evidence presented. This is a very complex and difficult task, especially when there are no findings of fact and conclusions of law to guide this court in dealing with the various factors involved in a case concerning the termination of a franchise agreement.

On appeal from summary judgment the record must be viewed in the light most favorable to the party opposing the motion.[4] The moving party bears the burden of showing both that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[5]

Summary judgment procedure "is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists". Whitaker v. Coleman, 5 Cir. 1940, 115 F.2d 305 at 307; 3 Barron & Holtzoff (Wright Ed.), § 1231.

The party opposing the motion should be given the benefit of all reasonable doubts in determining whether a genuine issue exists. Heyward v. Public Housing Administration, 5 Cir. 1956, 238 F.2d 689 at 696.

■ Rule 56 does not permit trial by affidavits although affidavits may be used on a motion for summary judgment, but the court may not resolve disputed fact issues by reference to these affidavits. 3 Barron & Holtzoff (Wright Ed.) § 1234, n. 56.

This court takes note of the fact that it is always true, whether or not the non-moving party has submitted affidavits or similar material, that the burden is on the moving party to establish the absence of a genuine issue as to any material fact, and that he is entitled to judgment as a matter of law. 3 Barron & Holtzoff (Wright Ed.) § 1235, nn. 89.-2, 90. From the record before us we do not find the defendant to have sufficiently demonstrated that it was entitled to summary judgment.

## III.

■ It is possible that there was a procedural misunderstanding concerning Rule 56(e) of the Federal Rules of Civil Procedure. That rule states:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate, shall be entered against him.*" (Emphasis added).

Therefore, another problem presented in this appeal appears to be whether a respondent to a motion for summary judgment may not file affidavits and still be entitled to a denial of the motion. Benton-Volvo-Metairie did not file affidavits

---

4.  Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), at 473; Pogue v. Great A & P Tea Company, 242 F.2d 575 at 576 (5 Cir. 1957) ; 3 Barron & Holtzoff (Wright Rules Edition), Section 1242, page 198, note 46.

5.  Rule 56(c), Federal Rules of Civil Procedure ; Palmer v. Chamberlin, 191 F.2d 532 at 540 (5 Cir. 1951).

or respond to the motion for summary judgment by Volvo Southwest. However, this court feels that in certain cases the filing of counter affidavits would be only a perfunctory task. Dawkins v. Green, 412 F.2d 644 (5 Cir. 1969) at 646. It is well established that on a motion for summary judgment, the moving party carries the burden of proof, and he must show that no genuine issue of material fact exists even though at trial his opponent had the burden of proving the facts alleged. Dawkins v. Green, supra; Doff v. Brunswick Corporation, 372 F.2d 801 (9 Cir. 1967). In the case before us now defendants moved for summary judgment and submitted affidavits to support such a motion; plaintiff filed no affidavits. If this was then an *appropriate* case for summary judgment the action could have been properly ended at that point. However, the affidavits filed by the defendant are simply a restatement of the denials and counter charges contained in their answer and they contained no new information. Moreover, they set forth only ultimate facts or conclusions in that their contents are statements made by Lars Samuelson and copies of correspondence between the parties which in no way proved or disproved any of the allegations set out in the complaint and answer. It does not appear that any facts are present so that the trial court could actually arrive at its own conclusions. It should be remembered that in summary judgment proceedings affidavits containing mere conclusions have no probative value.[6]

*Conclusion*

After careful review of the record below, this court finds that there were other possible grounds [7] aside from the question of constitutionality of the Louisiana statute that the lower court could have used as rationale for granting or refusing to grant summary judgment. This court, not having before it adequate evidence upon which to rule, therefore remands this case for further proceedings not inconsistent with this opinion.

Vacated and remanded.

---

6. In Woods v. Allied Concord Financial Corporation (Delaware), 5 Cir. 1967, 373 F.2d 733, it is made clear that affidavits containing mere conclusions do not have probative value during summary judgment proceedings. That rule has previously been set down in Bsharah v. Eltra Corporation, 6 Cir. 1968, 394 F.2d 502; Creel v. Lone Star Defense Corporation, 5 Cir. 1949, 171 F.2d 964.

7. On remand, we feel the district court should address the following issues: First, was the original summary judg-

ment based on a finding that the statute is unconstitutionally vague? Irrespective of the validity of the statute itself, has the plaintiff sufficiently presented a claim that this contract clause is against the clearly established public policy of the state so that an action under general contract law can be maintained? Finally, if these grounds were not the basis for the decision below, was other evidence submitted in support of the affidavits and affirmative defenses of the complainant?