**Guy WOODDELL, Jr., Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION 71, et al., Defendants.**

**No. C2–86–0903.**

United States District Court, S.D. Ohio, E.D.

Oct. 19, 1988.

Theodore Meckler, Cleveland, Ohio, for plaintiff.

Fred Cloppert, Columbus, Ohio, for defendants.

## ORDER

GRAHAM, District Judge.

This case arises out of an intra-union dispute which is complicated by an intra-family dispute between the plaintiff union member and his brother, the union president. Plaintiff is a member of defendant International Brotherhood of Electrical Workers, Local Union 71 ("Local 71"). Defendant R.L. Wooddell is the president of Local 71 and defendant Gregory Sickles is the business manager. Plaintiff is the younger brother of defendant Wooddell and Sickles is the son-in-law of the elder Wooddell.

Plaintiff alleges that in January, 1986 he expressed his opposition to a proposed amendment to the by-laws of Local 71 and criticized the appointment of defendant Sickles as business manager. Plaintiff further alleges that as a result, on January 28, 1986 his brother filed internal union charges against him, claiming that he had made false accusations against him and Mr. Sickles and that this violated a provision of the Constitution of the International Union. Plaintiff was directed to appear before the Executive Board of Local 71 on March 14, 1986 to answer these charges. Plaintiff did appear at the meeting and denied that he was guilty of the alleged offense. No formal disposition of the charges was ever made and defendants contend that they were "informal" and were not intended to result in punishment of the plaintiff. Plaintiff asserts, however, that nothing prevents the defendants from entering a finding of guilty and imposing punishment at any time and that the charges continue to represent a threat of harm. Plaintiff claims that the charges were improperly commenced, that they were filed in retaliation for his exercise of his rights of freedom of speech guaranteed under the union constitution, and that he did not receive a fair hearing. Plaintiff claims that he did not receive a fair hearing because his brother not only filed the charges, but presided over the hearing in his capacity as president of Local 71.

Plaintiff further claims that as a result of speaking out against the proposed by-law amendment and the appointment of defendant Sickles as business manager, he was subjected to retaliation in the form of manipulation of the union's job referral system, resulting in loss of employment. Local 71 operates a hiring hall in which it refers members and non-members to prospective employers. This is a first in, first out system in which the applicants for employment are classified into four subgroups, denominated groups I through IV, depending upon various criteria including years of experience in the trade, residency in the geographical area constituting the labor market and other factors. All applicants in Group I must be referred out before proceeding to the applicants in Group II and so on with Groups III and IV.

Plaintiff asserts two distinct claims of alleged discrimination by the defendants in the operation of the job referral plan. First, he claims that the defendants did not refer him out for jobs when his name came up on the list. In his amended complaint, plaintiff alleged that this form of economic discrimination began on January 27, 1986. Defendant denies that such discrimination occurred. The second element of plaintiff's claim of economic discrimination by improper operation of the job referral system is his claim that on May 29, 1986, defendants improperly transferred him from Group I to Group II. Defendants admit that this occurred but allege that it was a proper reclassification because plaintiff had not worked the required number of hours during the preceding three years in order to qualify for a position in Group I. Plaintiff disputes this and claims that he did have the requisite number of hours.

Based on the above facts, plaintiff asserted a variety of claims including interference with and retaliation for the exercise of his right of free speech in violation of Title I of the Labor–Management Reporting and Disclosure Act (LMRDA) 29 U.S.C. §§ 411, 412, and 529; deprivation of his right to a full and fair hearing in violation of the LMRDA; breach of a labor contract in violation of § 301 of the Labor Management Relations Act (LMRA) 29 U.S.C. § 185 and Ohio law; breach of the

duty of fair representation in violation of § 301; intentional interference with contractual relations; and intentional infliction of emotional distress.

Plaintiff's breach of contract claims have two branches, first, plaintiff claims that the actions of the defendants complained of constituted a breach of the Constitution of the International Union and the by-laws of Local 71 and second, that their actions constituted a breach of the referral provisions of the collective bargaining agreements entered into between Local 71 and various contractors.

In a memorandum and order filed on March 21, 1988, the Court granted partial summary judgment to the defendants. The Court dismissed plaintiff's claims under § 301 of the LMRA and state law for breach of the union constitution, citing *Trail v. International Brotherhood of Teamsters,* 542 F.2d 961 (6th Cir.1976) and recent district court decisions following *Trail.* The Court further reasoned that inasmuch as plaintiff's claims arose out of alleged retaliation for the exercise of his rights of free speech, matters specifically covered by the LMRDA, he had an adequate remedy under that act for his breach of contract claims based upon alleged violations of the constitution and by-laws of the unions. *See* 29 U.S.C. §§ 411(a)(1), (2), (5); 529. At that time, the Court also granted summary judgment in favor of the individual defendants Wooddell and Sickles with respect to the claims asserted against them under § 301 since the weight of authority holds that individual defendants cannot be held liable under that statute.

The Court then scheduled this matter for trial on August 29, 1988. On July 19, 1988, defendants filed a second motion for summary judgment. The parties appeared for trial on August 29, 1988, and the Court thereupon made oral rulings on the issues raised by defendants' second motion for summary judgment and proceeded to conduct a hearing pursuant to Rule 56(d) on the issue of whether or not defendant was entitled to summary judgment on the grounds that plaintiff's claims were barred by the doctrine of collateral estoppel. The Court concluded that plaintiff was not collaterally estopped from pursuing his claims of discriminatory job referrals and improper reclassification from Group I to Group II in the referral system.

In ruling on defendants' motion for summary judgment, the Court held that with respect to plaintiff's claims based upon his reclassification from Group I to Group II of the referral system, plaintiff's claims were barred by his failure to exhaust the internal contractual remedies for such a complaint. Each of the collective bargaining agreements established an appeals committee consisting of a member appointed by the union, a member appointed by the employer or employer association, and a public member appointed by both of the other members. The function of the committee "was to consider any complaint of any employer or applicant for employment arising out of the administration of the contractual provisions governing referrals." The appeals committee was empowered to make a decision which was binding on the local union. The agreement between the local union and the Greater Cleveland Chapter of the National Electrical Contractors Association contained the following provision:

An appeals committee is hereby established composed of one member appointed by the union, one member appointed by the employer or by the association, as the case may be, and a public member appointed by both of these members. It shall be the function of the appeals committee to consider any complaint of any employer or applicant for employment arising out of the administration of the local union of Sections 3 to 7 of this addendum. [Sections 3 through 7 set forth the referral procedure, including the classification of applicants into groups I through IV and the conditions for those classifications]. The appeals committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the local union. The appeals committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any provisions of this

addendum and its decisions shall be in accord with this addendum.

 The Court concluded that this appeals procedure provided the plaintiff with a speedy and adequate remedy for his grievances over classification. Whether plaintiff was properly reclassified could have readily been determined by records maintained by the union and the employers, or by reference to the plaintiff's own records. This dispute could have been promptly resolved by the appeals committee, a fair and impartial tribunal consisting of representatives of both the union and the employer, as well as a public member. The committee's decision would have been binding on the union. It is undisputed, however, that plaintiff made no attempt to utilize this procedure. Therefore, he is precluded from raising these claims for the first time in this Court. The requirement of exhaustion of contractural remedies bars plaintiff's claims under the LMRA. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967); *Dill v. Greyhound Corp.*, 435 F.2d 231, 237 (6th Cir.1970), *cert. denied*, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971); *Bsharah v. Eltra Corp.*, 394 F.2d 502, 503 (6th Cir. 1968); *Woody v. Sterling Aluminum Products, Inc.*, 365 F.2d 448, 456 (8th Cir. 1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967). Likewise, plaintiff's failure to exhaust his contractual remedy bars his claims under the LMRDA. 29 U.S.C. § 411(a)(4) provides:

> No labor organization shall limit the right of any member thereof to institute an action in any court ... *Provided that such member shall be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal ... proceedings against such organization or any officer thereof.*

The exhaustion requirement has been upheld in *Bise v. International Electrical Workers*, 618 F.2d 1299 (9th Cir.1979), *cert. denied*, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980); *McCraw v. United Association*, 341 F.2d 705, 711 (6th Cir.1965); *Chapa v. Local 18*, 737 F.2d 929 (11th Cir.1984); *Detroy v. American Guild of Variety Artists*, 286 F.2d 75 (2d Cir.), *cert. denied*, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961); *Winter v. Local 639*, 569 F.2d 146 (D.C.Cir.1977).

The Court concluded, however, that although this contractual remedy would be fully adequate for plaintiff's claim of improper reclassification from Group I to Group II, it would not be an effective remedy for his claims of discrimination and manipulation of the referral process itself. The appeals committee does not have the authority to award damages for lost wages and it would be difficult for the plaintiff to effectively utilize the appeal machinery to remedy a pattern of daily discrimination in job referrals. Plaintiff would have to constantly monitor the activities of the business agent in order to detect discrimination and the vindication of his rights under the referral system might require the filing of multiple appeals. Accordingly the Court concluded that plaintiff was not barred from pursuing his claims of discrimination in job referrals. In retrospect the Court harbors some doubt as to the wisdom of this distinction and feels that a good argument can be made that the contractual remedy is equally adequate to remedy claims of discrimination in referrals. However, this issue has been mooted by subsequent developments, see discussion of *Breininger v. Sheet Metal Workers Local 6, infra.*

When the Court announced its decision, plaintiff's counsel indicated his desire to conditionally dismiss plaintiff's claims based upon discriminatory job referrals. Counsel stipulated that plaintiff did not sign the referral list indicating that he desired employment until March 11, 1986, a little more than two and one-half months before his reclassification to Group II on May 29, 1986. Plaintiff indicated that he would have difficulty proving significant damages during this interval and that his

main damage claim rested upon his reclassification from Group I to Group II. The parties then agreed that plaintiff would conditionally dismiss his claim for discrimination in referrals with the understanding that the Court would make appropriate findings and an order under Rule 54(b) Fed.R.Civ.P., permitting plaintiff to appeal the Court's rulings on plaintiff's remaining claims with the understanding that plaintiff would be permitted to reinstate his claims of discrimination in job referrals only in the event of a reversal of the Court's dismissal of his claims arising out of his reclassification from Group I to Group II.

With regard to plaintiff's claims that he had been subjected to an improper disciplinary proceeding in violation of the LMRDA, the parties entered into a stipulation that the union would take no further action against the plaintiff with respect to the charges referred to in the notice of February 24, 1986 and that those charges would be considered dismissed. On the basis of this stipulation, the Court found that the charges in question presented no further threat to the plaintiff which would justify injunctive relief and that plaintiff had shown no evidence of actual damages as a result of the filing of those charges or the hearing of those charges at the executive board meeting of March 14, 1986. Accordingly, the court found that defendants were entitled to summary judgment on plaintiff's claims that he was subjected to improper charges and was deprived of his right to a full and fair hearing in violation of the LMRDA or in violation of the constitution of the International Brotherhood of Electrical Workers or the by-laws of Local 71.

In his memorandum contra defendants' second motion for summary judgment, plaintiff indicated that he was withdrawing his claim for intentional infliction of emotional distress. *Id.* at 34.

■ On September 6, 1988, before the Court had entered an order confirming its rulings of August 29th, 1988, defendants' counsel brought to the Court's attention the decision of the Sixth Circuit in *Breininger v. Sheet Metal Workers Local 6,* 841 F.2d 1125 (1988). On September 9, 1988, defendants filed a motion for leave to file additional authorities or for reconsideration based upon the *Breininger* decision. In *Breininger,* the court held that union discrimination in job referrals is a matter within the exclusive jurisdiction of the NLRB:

■ It is of no consequence that the union's allegedly discriminatory referral policies are described as a breach of the NLRA's duty of fair representation or as a violation of the LMRDA's bill of rights. "It is not the label affixed to the cause of action ... that controls the determination." [*Local 100 of United Association of Journeymen and Apprentices v.*] *Borden,* 373 U.S. [690] at 698 [83 S.Ct. 1423, 1427, 10 L.Ed.2d 638 (1963)]. The case law developed subsequent to *Borden* and [*International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers, and Helpers, AFL–CIO v.*] *Hardeman* [401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971)] forecloses either theory.

■ Circuit courts have consistently held that NLRA fair representation claims must be brought before the board.

The court further held that discrimination in job referrals did not constitute "discipline" within the meaning of the LMRDA, 29 U.S.C. § 411(a)(5):

... The LMRDA's bill of rights is intended to secure the rights of members in their status as union members and does not secure other rights related to a member's employment ... Hiring hall referrals are not a function of union membership since referrals are available to non-members, as well as to members.... Discrimination in the referral system, because it does not breach the employee's union membership rights, does not constitute "discipline" within the meaning of LMRDA.

*Breininger* supplies an additional ground for the Court's order of summary judgment on plaintiff's claims arising out of his reclassification from Group I to Group II of the referral system, and *Breininger* furnishes a basis for final judgment in favor

of the defendants on plaintiff's claims arising out of alleged discrimination in the referral system. Accordingly, the Court will modify its oral decision accepting plaintiff's conditional dismissal of those claims and instead the Court will enter summary judgment on those claims on the authority of *Breininger.*

 Plaintiff has asserted claims under state law for breach of contract and for intentional interference with contractual rights. In each instance, he is relying on provisions of the Constitution of the International Union and the by-laws of the Local Union. Insofar as these claims relate to provisions guaranteeing plaintiff a fair and impartial trial, defendants are entitled to judgment on the same grounds as respects plaintiff's claims under the LMRA, 29 U.S.C. § 411(a)(5). Plaintiff sustained no damages as a result of the alleged unfair hearing and the charges filed against him have been concluded in his favor. With respect to claims arising out of the provisions of the by-laws of Local 71, which require the business manager to devise a "practical and fair" means of distributing available jobs to qualified members, plaintiff's state law claims are preempted by the NLRB act and are within the exclusive jurisdiction of the NLRB. *See International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO v. Hardeman,* 401 U.S. 233, 239–40, 91 S.Ct. 609, 613–14, 28 L.Ed.2d 10 (1971); *Local 100, United Association of Journeymen & Apprentices v. Borden,* 373 U.S. 690, 694–96, 83 S.Ct. 1423, 1425–26, 10 L.Ed.2d 638 (1963). Furthermore, the Court has held that insofar as those claims relate to plaintiff's reclassification from Group I to Group II of the referral system, they are barred by his failure to exhaust his contractual remedies.

Insofar as plaintiff's contract claims relate to a requirement that the local union abide by the collective bargaining agreements entered into with employers, the claims are likewise grounded on alleged discrimination in referrals and reclassification from Group I to Group II within the referral system. Plaintiff claims that the Constitution of the International Union requires the Local Union to "live up to all collective bargaining agreements." Therefore, plaintiff would appear to be claiming that this provision of the Constitution of the International Union is a contract binding on the local union and that he has a cause of action for breach of that contract. Plaintiff further claims that he has a cause of action against the local union for intentional interference with the collective bargaining agreement vis-a-vis his claims of discriminatory referral and improper reclassification. Again, since these claims relate only to alleged discrimination in the job referral system, they are preempted by the NLRB act and are subject to the exclusive jurisdiction of the NLRB and plaintiff has no claims under state law.

In light of the foregoing, defendants' motion for summary judgment is well taken in all of its branches and the clerk shall enter final judgment in favor of the defendants, dismissing all of the plaintiff's claims with prejudice with costs to plaintiff.

It is so ORDERED.